UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
ANDERSON JOSEPH,

                Plaintiff,

      - against -

ROW HOTEL,

                Defendant.
--------------------------------------------------------x
ANDERSON JOSEPH,

                Plaintiff,

      - against -

CHILDREN'S RESCUE FUND,

                Defendant.
--------------------------------------------------------x
ANDERSON JOSEPH,

                Plaintiff,

      - against -

THE LANDING FAMILY SHELTER,

                Defendant.
--------------------------------------------------------x
ANDERSON JOSEPH,

                Plaintiff,

      - against -

SPRING FAMILY RESIDENCE,

                Defendant.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-1691 (PKC) (PK)

21-CV-1692 (PKC) (PK)

21-CV-1693 (PKC) (PK)

21-CV-1694 (PKC) (PK)

ANDERSON JOSEPH,

                Plaintiff,

    - against -                                    21-CV-1695 (PKC) (PK)

HOLLIS FAMILY RESIDENCE,

                Defendant.

---------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Plaintiff Anderson Joseph, proceeding *pro se*, has filed five actions under 42 U.S.C. § 1983 ("Section 1983") alleging poor conditions and/or mistreatment by staff at shelters for people experiencing homelessness in New York City.[1] These actions are consolidated solely for the purpose of this Order. Plaintiff's requests to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915 are granted. For the reasons discussed below, all five actions are dismissed.[2]

---

[1] The Court notes that in recent weeks, Plaintiff has filed more than 15 other cases against various individuals, organizations, and entities based on allegations that are unrelated to the allegations set forth in the Complaints associated with the cases captioned herein. *See Joseph v. Nassau Cnty. Dep't of Prob.*, No. 21-CV-1690 (PKC) (PK); *Joseph v. Supreme Ct. of the State of N.Y.*, No. 21-CV-1685 (PKC) (PK); *Joseph v. Legal Aid Soc'y*, No. 21-CV-1686 (PKC) (PK); *Joseph v. N.Y.C. Police Dep't*, No. 21-CV-1687 (PKC) (PK); *Joseph v. Kirby Forensic Psychiatric Ctr.*, No. 21-CV-1688 (PKC) (PK); *Joseph v. Dep't of Probation*, No. 21-CV-1689 (PKC) (PK); *Joseph v. MTA NYC Transit*, No. 21-CV-1696 (PKC) (PK); *Joseph v. H. Stark*, No. 21-CV-2136 (PKC) (PK); *Joseph v. Jamaica Hosp. Med. Ctr.*, No. 21-CV-2137 (PKC) (PK); *Joseph v. Mount Sinai Queens*, No. 21-CV-2139 (PKC) (PK); *Joseph v. NYU Langone Med. Bus. Off.*, No. 21-CV-2140 (PKC) (PK); *Joseph v. Queens Hosp. Ctr.*, No. 21-CV-2141 (PKC) (PK); *Joseph v. Wells Fargo Bank*, No. 21-CV-2810 (PKC) (PK); *Joseph v. TD Bank*, No. 21-CV-2811 (PKC) (PK); *Joseph v. Ridgewood Sav. Bank*, No. 21-CV-2812 (PKC) (PK); *Joseph v. CMJ Mgmt. Inc.*, No. 21-CV-2813 (PKC) (PK); *Joseph v. Chase Bank*, No. 21-CV-2814 (PKC) (PK); *Joseph v. Bank of Am.*, No. 21-CV-2816 (PKC) (PK).

[2] The Court notes that the docket for case No. 21-CV-1694 reflects "Spring Family Residence" as the Defendant, while Plaintiff's Complaint identifies "Springfield Family Residence" as the Defendant. (*See* No. 21-CV-1694, Dkt. 1, at 1.) The Clerk of Court is respectfully directed to update the docket in case No. 21-CV-1694 to identify Defendant as "Springfield Family Residence."

## LEGAL STANDARD

A complaint must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although all allegations contained in the compliant are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A document filed *pro se* is to be liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *see McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004) ("[A] court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations."). "If [a] liberal reading of the complaint 'gives any indication that a valid claim might be stated,' the Court must give the plaintiff an opportunity to amend the complaint." *Nelson-Charles v. U.S. Dep't of Educ.*, No. 19-CV-1616 (PKC) (PK), 2019 WL 1675999, at *2 (E.D.N.Y. Apr. 16, 2019) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Nevertheless, under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an IFP action where it is satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "An action is frivolous when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotation marks and citation omitted).

**BACKGROUND**

In each of the Complaints filed in these five *pro se* actions, Plaintiff alleges poor conditions and/or mistreatment by staff at shelters for people experiencing homelessness in New York City.

In his Complaint against Row Hotel,[3] Plaintiff alleges that in or around October 2018, the staff were "very loud 24/7" and otherwise disruptive to his and his wife's sleep and privacy. (*See* No. 21-CV-1691, Dkt. 1, at 4.) Plaintiff alleges that these disruptions caused stress and depression disorder, and demands $100 million in damages for pain and suffering. (*Id.* at 4–5.)

In his Complaint against the Children's Rescue Fund,[4] Plaintiff alleges that the facility where he and his pregnant wife lived for approximately two months in or around December 2018, was "very dirty," that their room was "too small," that the elevator did not work, and that the staff was abusive, discriminatory, and treated them "like animals." (*See* No. 21-CV-1692, Dkt. 1, at 3–4.) Plaintiff alleges that he felt very stressed and depressed, and seeks $12 million in damages "for discrimination." (*Id.* at 4–5.)

In his Complaint against The Landing Family Shelter,[5] Plaintiff complains that the food at the shelter was bad during his stay there in or around February 2020. (*See* No. 21-CV-1693, Dkt.

---

[3] The Court assumes that Row Hotel refers to the Row NYC Hotel, with which New York City contracted to house families as part of its Turning the Tide on Homelessness housing program. *See* Lois Weiss, *City Reserves 57 Rooms of Row NYC Hotel for Homeless Housing*, N.Y. POST (Oct. 10, 2017), https://nypost.com/2017/10/10/city-reserves-57-rooms-of-row-nyc-hotel-for-homeless-housing/.

[4] According to the Children's Rescue Fund's website, the organization's "core purpose is to serve those experiencing homelessness with timely, critical services that assist and empower them to become independent." *See* CHILDREN'S RESCUE FUND, https://childrensrescuefund.org/about-us/ (last visited June 7, 2021). To that end, the Children's Rescue Fund operates programs at several hotels in New York City, including the Row NYC Hotel. *See CRF Programs at NYC Hotels*, CHILDREN'S RESCUE FUND, https://childrensrescuefund.org/crf-programs-at-nyc-hotels/ (last visited June 7, 2021).

[5] The Landing Family Shelter is a temporary homeless shelter for families. *See The Landing Family Shelter*, HOMELESS SHELTERS DIRECTORY,

1, at 3–4.) Plaintiff does not allege any injuries or seek any monetary damages, but wants the food at the shelter to change. (*Id.* at 4–5.)

In his Complaint against the Springfield Family Residence,[6] Plaintiff alleges that on or about March 18, 2020, the residence staff was abusive and was "doing experiments" on him and his family "without [his] permission," causing him to feel "disrespected and discriminate[d]" against. (No. 21-CV-1694, Dkt. 1, at 3–4.) Specifically, Plaintiff alleges that, one night, the staff tried to open their door "just to scare[]" them or "maybe to kill[]" them. (*Id.* at 4.) Plaintiff alleges that he felt depressed and stressed, but that the staff would not stop "doing the experiment." (*Id.*) Plaintiff seeks $500 million in damages for pain and suffering. (*Id.* at 4–5.)

Finally, in his Complaint against Hollis Family Residence,[7] Plaintiff alleges that during his stay at the residence in or around October 2020, he and his family could not sleep because the staff was "loud every nigh[t]" and rang the doorbell at all hours "for no reason." (No. 21-CV-1695, Dkt. 1, at 3–4.) Further, Plaintiff alleges that the staff did nothing after he reported that the people in the room above his were "making noise 24/7." (*Id.* at 4.) Plaintiff alleges that he and his family are suffering from "stress disorder and depression" because of the loud noises, and demands $100 million in damages for pain and suffering. (*Id.* at 4–5.)

---

https://www.homelessshelterdirectory.org/shelter/ny_the-landing-family-shelter (last visited June 7, 2021).

[6] The Springfield Family Residence appears to be a shelter operated by the Salvation Army. *See Springfield Family Residence*, NYC SERVICE, https://www.nycservice.org/organizations/index.php?org_id=2641 (last visited June 7, 2021).

[7] The Court has not found a listing for "Hollis Family Residence," but based on the allegations in the Complaint against this Defendant, viewed in the context of Plaintiff's other Complaints, the Court assumes that this is also a residence or shelter for those who are experiencing homelessness in New York City.

## DISCUSSION

### I. 42 U.S.C. § 1983

Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *accord Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) ("Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."). To state a claim under Section 1983, a plaintiff must allege that the conduct at issue was "committed by a person acting under color of state law" and that the conduct deprived plaintiff "of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994)).

"[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks omitted). However, the Second Circuit has identified three main tests for determining when the actions of a "nominally private entity are attributable to the state" for purposes of Section 1983:

> (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state ("the public function test").

6

*Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

To start, it appears that the five Defendants named in the above-captioned actions are private entities. "[T]he provision of homeless services by a private organization, even under contract with the state or where subject to governmental regulation, does not turn the private organization or its employees into state actors." *Ortega v. Samaritan Vill. Myrtle Ave. Men's Shelter*, No. 18-CV-5995 (KAM) (RER), 2020 WL 1043305, at *4 (E.D.N.Y. Mar. 4, 2020) (quotation marks omitted). Plaintiff does not allege that any of the Defendants acted under color of state law and there are no facts in the Complaints that, even on a liberal reading, demonstrate that the actions of the Defendants may be "fairly attributable" to the state. Therefore, any Section 1983 claims against Defendants must be dismissed for failure to state a claim upon which relief could be granted. *See, e.g.*, *Ortega*, 2020 WL 1043305, at *4 (dismissing Section 1983 claims against a private organization providing housing to the homeless under contract with New York City because the plaintiff failed to show "that this private organization is performing a public function sufficient to turn the shelter or its employees into state actors for purposes of § 1983 liability"); *Al-Qadaffi v. Acacia Network*, No. 16-CV-05423 (BMC) (RLM), 2016 WL 6072374, at *3 (E.D.N.Y. Oct. 17, 2016) (dismissing Section 1983 claims against homeless shelter, its network operator, and its director because the plaintiff failed to allege that defendants were state actors); *Carter v. Rennessanice sic? Men's Shelter*, No. 12-CV-5999 (BMC) (VMS), 2013 WL 308685, at *2 (E.D.N.Y. Jan. 25, 2013) (dismissing Section 1983 claims against a private organization operating a homeless shelter and its staff members because the defendants were not "state actors" and the plaintiff did not adequately allege that the defendants "perform a public

function sufficient to turn the organizations or their employees into state actors for purposes of § 1983 liability").

Furthermore, the Complaints must be dismissed because Plaintiff's allegations related to the conditions at various shelters, including that the shelters were loud, dirty, in disrepair, or otherwise not to his liking, do not rise to the level of constitutional violations.[8] Access to shelter is not a constitutional right, nor is the government obligated to provide adequate housing. *See Lindsey v. Normet*, 405 U.S. 56, 74 (1972); *accord Richardson v. City of New York*, No. 12-CV-2545 (WHP), 2013 WL 2124176, at *2 (S.D.N.Y. Apr. 17, 2013). Although the Court recognizes the difficulty of Plaintiff's circumstances, the Constitution does not impose a duty of care where, as here, Plaintiff was not in custody against his will and was free to leave any of the shelters. *See, e.g.*, *Ghouneim v. DHS*, No. 19-CV-748 (CM), 2019 WL 1207857, at *2–3 (S.D.N.Y. Mar. 13, 2019); *Brown v. City of New York*, No. 17-CV-5836 (LDH) (ST), 2018 WL 1770557, at *4 (E.D.N.Y. Apr. 12, 2018) (dismissing Section 1983 claim against shelter employees who did not owe the plaintiff a duty of care because, *inter alia*, she was "free to leave the shelter"); *Carter v. City of New York*, No. 13-CV-1839 (RA), 2014 WL 4953641, at *3 (S.D.N.Y. Sept. 30, 2014) (finding that the plaintiff's Section 1983 claim that his living quarters in shelter were infested with insects and rodents did not implicate the Constitution because, *inter alia*, the plaintiff was free to leave the shelter). Accordingly, Plaintiff's allegations related to shelter conditions do not rise to

---

[8] Plaintiff fails to provide any facts to support his conclusory allegations that staff acted in an abusive or discriminatory manner (*see* No. 21-CV-1692, Dkt. 1, at 3–4), nor does he provide any facts to explain the alleged "experiments" performed on him and his family (*see* No. 21-CV-1694, Dkt. 1, at 3–4). The Court finds that these allegations border on frivolous, if not fantastical, and concludes that they fail to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B); *Livingston,* 141 F.3d at 437 (explaining that actions are frivolous when they rest on "factual contentions [that] are clearly baseless, such as when allegations are the product of delusion or fantasy" (internal quotation marks and citation omitted)).

the level of a constitutional violation, and his five Section 1983 actions based on such allegations must be dismissed.

## II. Denial of Leave to Amend

As discussed, the Court has a duty to give a *pro se* plaintiff the opportunity to amend his complaint if a "liberal reading of the complaint 'gives any indication that a valid claim might be stated[.]'" *Nelson-Charles*, 2019 WL 1675999, at *2 (quoting *Cuoco*, 222 F.3d at 112). However, where it would be futile to do so because the claims are fundamentally invalid, the Court may deny the plaintiff this opportunity. *See Cuoco*, 222 F.3d at 112 ("The problem with [Plaintiff]'s causes of action is substantive; better pleading will not cure it. Repleading would thus be futile."); *accord Kraft v. City of New York*, 823 F. App'x 62, 64 (2d Cir. 2020) (summary order). The Court finds that it would be futile to allow Plaintiff to re-plead the claims asserted in these five actions, and therefore declines to grant him the opportunity to file amended complaints in any of these actions.

## III. Filing Injunction Warning

The federal courts have limited resources. Frequent frivolous filings diminish the ability of the federal courts to manage their dockets for the efficient administration of justice. "The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (brackets, internal quotation marks, and citation omitted).

Plaintiff is warned that future filing of vexatious and frivolous litigation by him may result in sanctions, including the imposition of an injunction prohibiting him from making future filings seeking IFP status without first obtaining permission from the Court. *See In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994) ("With respect to civil litigation, courts have recognized that the normal

opportunity to initiate lawsuits may be limited once a litigant has demonstrated a clear pattern of abusing the litigation process by filing vexatious and frivolous complaints.").

## CONCLUSION

The Complaints filed in the above-captioned cases are dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Clerk of Court is respectfully directed to (1) amend the docket in case No. 21-CV-1694 to identify Defendant as "Springfield Family Residence," and (2) enter judgments and terminate the above-captioned cases.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith, and therefore IFP status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: June 11, 2021
       Brooklyn, New York